UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN C. MOORE, | : |
| | : |
| Plaintiff | : |
| | : |
| v. | : CIVIL NO. 3:CV-13-2771 |
| | : |
| ANGELA D. MANN, <u>et al</u>., | : (Judge Kosik) |
| | : |
| Defendants | : |

**<u>MEMORANDUM</u>**

This civil rights action pursuant to 42 U.S.C. § 1983 was initiated by Plaintiff, Brian C. Moore, an inmate confined at the State Correctional Institution at Smithfield (SCI-Smithfield), Pennsylvania. The matter proceeds on an amended complaint (Doc. 10), wherein employees of the Pennsylvania Department of Corrections (DOC), who work at SCI-Coal Township and John Wetzel, Secretary of the DOC, are named as defendants. Presently pending is Defendants' motion to dismiss the amended complaint. (Doc. 28.) For the reasons that follow, the motion will be granted in part and denied in part.

**I.    Background**

Plaintiff files this action against Counselor Mann, former Superintendent David Varano, Unit Manager Foulds, Correctional Officers Briner, Zamboni, Hering and

Long, and DOC Secretary Wetzel. He alleges that while confined at SCI-Coal Township in August/ September of 2011, he saw Defendant Mann participating in a sexual act with an inmate. (Doc. 10, Am. Compl. at 2.) During this same period of time, Mann began discussing the details of Plaintiff's criminal case with other staff members and inmates. In September of 2011, Mann told another staff member, who then told Defendant Foulds, that Plaintiff had an "attitude problem." (Id. at 3.) Plaintiff believes Mann thereafter attempted to move him to a different unit in the prison.

On or about September/October of 2011, Mann told Defendant Hering loudly in front of other staff members and inmates on B-2 unit that ". . . inmate Moore is out of his mind, he is a child rapist who belongs in a psychiatric hospital." (Id.) on or about October of 2011, Mann also told Defendant Briner that he would be glad when Plaintiff left the institution, because he was a snitch and a pedophile. While Plaintiff alleges that this statement was made on B-2 unit, he does not specify whether it was made in front of other inmates.

Plaintiff alleges that as a result of Defendants Mann, Zamboni, Briner, Foulds and Long discussing his criminal case with inmates and staff members, he was been threatened with bodily harm at SCI-Coal Township in 2011-2012 and at SCI-Smithfield in 2013. Plaintiff brought his concerns about Mann's behavior to Defendant Foulds in September of 2011.

On November 14, 2011, Plaintiff again observed Mann engaging in sexual activities on B-2 unit in her office with an inmate. (Id. at 3.) He claims that Defendants Zamboni and Briner were aware that this activity was taking place on said date, but did nothing to stop it. (Id. at 4.) When the inmate left, Plaintiff entered Mann's office. During the 2 p.m.-10 p.m. shift that same day, Mann wrote a misconduct report (#429102) on Plaintiff charging him with sexual harassment. After being found guilty, Plaintiff was sanctioned to 270 days in the Restricted Housing Unit. Plaintiff claims that because of the misconduct report and the harassment by staff members, he forfeited months of earned wages during 2011-2012 at SCI-Coal Township.

Plaintiff filed a grievance with respect to the above issues (#401780), and Defendant Long was assigned to investigate the matter. Defendant Varano was also made aware of the allegations set forth in this complaint pursuant to Plaintiff's grievance appeal. Plaintiff also made Defendant Wetzel aware of this information pursuant to a letter he sent to the Office of Professional Responsibility in March of 2012. (Id. at 4.) An officer from the Office of Special Investigations and Intelligence interviewed Plaintiff in March 2012 with respect to the above allegations.

Based on the above, Plaintiff identifies the following claims: (1) substantive due process violation; (2) deliberate indifference to his health/safety; (3) Pennsylvania state law tort claims for defamation and intentional infliction of

3

emotional distress; (4) violations of the Pennsylvania Constitution and the DOC's sexual harassment policy addressing sexual contact with inmates; and (5) violations of the Pennsylvania and Federal statutes prohibiting sexual contact between prison employees and inmates. (Id. at 5.) He seeks declaratory, injunctive and monetary relief.

## II. Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks Cnty. Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim. Conley, 355 U.S. at 47. Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. Id. The "complaint must allege facts suggestive of [the proscribed] conduct." Twombly, 550 U.S. at 564. Neither "bald assertions" nor "vague and conclusory allegations"

are accepted as true. See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Se. Pa. Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009)). The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(quoting Twombly, 550 U.S. at 556).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)(citations omitted); see also Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." Pension Benefit, 998 F.2d at 1196.

### III. Discussion

To state a viable § 1983 claim, a plaintiff must plead two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege, or immunity

5

secured by the Constitution or laws of the United States. Natale v. Camden County Corr. Facility, 318 F.3d 575, 580-81 (3d Cir. 2003). Personal involvement in the alleged wrongdoing is necessary for the imposition of liability in a civil rights action. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005); Sutton v. Rasheed, 323 F.3d 236, 249-50 (3d Cir. 2003). Section 1983 liability cannot be predicated solely on respondeat superior. Rizzo v. Goode, 423 U.S. 362 (1976); Rode v. Dellarciprete, 845 F.2d 1195,1207 (3d Cir. 1988). Individual liability can only be imposed if the state actor played an "affirmative part" in the alleged misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Rode, 845 F.2d at 1208, quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991). Moreover, if an official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. Rode, 845 F.3d at 1208; Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006). Further, simply alleging that an official failed to respond to a letter or request Plaintiff may have sent raising complaints is not enough to demonstrate the official had the requisite personal involvement. See Rivera v. Fischer, 655 F. Supp. 2d 235 (W.D.N.Y. 2009)(Finding that many courts have held that merely writing a letter of

6

complaint does not provide personal involvement necessary to maintain a § 1983 claim.).

Defendants have filed a motion seeking to dismiss the amended complaint on various grounds. The court will now address each of these grounds.

A. Failure to demonstrate requisite personal involvement of Defendants Varano, Wetzel and Long

As set forth above, liability under § 1983 requires personal participation in the alleged wrongdoing. Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). The doctrine of respondeat superior may not be used to impose liability against a government or supervisor solely by virtue of his position. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). The supervising official must have played an "affirmative part" in the alleged misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).

Plaintiff attempts to impose liability upon Defendants Varano and Long based upon their handling/review of his grievance and the appeal therefrom. Participation in the after-the-fact review of a grievance or appeal is not enough to establish personal involvement for purposes of § 1983 liability. Rode, 845 F.2d at 1208 (mere filing of a grievance is not enough to impute the actual knowledge necessary for personal involvement); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006)(holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish

7

that the officials and administrators were involved in the underlying allegedly unconstitutional conduct). A "mere linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of section 1983. Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985).

Based on the foregoing, the motion to dismiss will be granted with respect to Defendant Varano only on the basis of lack of personal involvement. Because Plaintiff alleges that Defendant Long participated in discussions about his underlying criminal case in front of inmates, the requisite personal involvement has been alleged by Plaintiff. (Doc. 10 at 3, ¶ 22.)

It is also well-established that the mere fact that Defendant Wetzel may have learned about Plaintiff's claims through a piece of correspondence he sent to the Office of Special Investigations and Intelligence is not enough to impute liability to Wetzel. Courts have found that an allegation that an official ignored correspondence from an inmate, and that the requesting of an investigation of his allegations, is insufficient to impose liability on the supervisory official. See Padilla v. Beard, et al., Civ. Action 1:06-cv-0478 (M.D. Pa. Apr. 11, 2006.) While under some circumstances a letter alerting local prison officials, who are in a position to take steps to protect an inmate, may impose such duties to take reasonable measures to guarantee the safety of the inmate, such is not the case here. Wetzel was not employed at SCI-Coal Township. Further, as Plaintiff admits, by the time he became

8

aware of the allegations via the letter Plaintiff wrote to the Office of Professional Responsibility, the matter was under investigation. (Id. at 4.) See generally Haywood v. Woods, No. 9:01-CV-0225, 2007 WL 1834641 at *10 (N.D.N.Y. June 25, 2007). For these reasons, the claims set forth against Defendant Wetzel will be dismissed from the complaint.

>   B. Claims for Monetary Damages against Defendants in their official capacities

The Eleventh Amendment bars Plaintiff's § 1983 claims against Defendants in their official capacities. Absent consent by the State, the Eleventh Amendment bars suits in federal court by private parties against states, state agencies, and state officials in their official capacities. Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267-70 (1997); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100-01 (1984). The bar extends to suits against departments or agencies that have no existence apart from the state. Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981). As when the state itself is named as the defendant, a suit for damages against a state agency or official in his official capacity is barred. Seminole Tribe, 517 U.S. at 58; Edelman v. Jordan, 415 U.S. 651, 667 (1974). Therefore, Plaintiff's § 1983 claims for damages against Defendants in their official capacities are dismissed.

>   C. State Law Tort Claims

Plaintiff requests that the court exercise its pendent jurisdiction over his state

9

law claims. Because no federal common law exists on any state-based claims, the court is required to apply Pennsylvania state law. In so doing, Plaintiff's state claims of defamation and intentional infliction of emotional distress are barred by sovereign immunity. They are intentional torts that Plaintiff alleges to have been committed within the scope of Defendants' employment with the DOC. See LaFrankie v. Miklich, 618 A.2d 1145, 1149 (Pa. Cmwlth. 1992).

To the extent Plaintiff attempts to raise claims in this action under the Pennsylvania constitution, Section 1983 only provides relief for conduct by a state actor who violates rights of a citizen that arise under federal law. As such, these claims are not properly pursued herein.

D.  Due Process Claims

Defendants also move to dismiss Plaintiff's substantive due process claims challenging his misconduct and the resulting disciplinary time he received, as well as the earned wages that he forfeited. Plaintiff's attempt to cast his false misconduct allegations as a due process violation fails to state a claim. Plaintiff was provided with a "procedural opportunity to address his assertion that the misconduct report w[as] false." Pressley v. Johnson, 268 F. App'x 181, 184 (3d Cir. 2008)(citing Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002)("as long as procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim.")). While Plaintiff protests the fact

10

that he was sanctioned to disciplinary custody in the RHU as a result of being found guilty, the sanction received of 270 days does not implicate a sufficient legal interest to trigger specific due process protections.

In analyzing any procedural due process claim, "the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000)(citing Fuentes v. Shevin, 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972)). Once we determine that a property or liberty interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it. Id. (citing Morrissey v. Brewer, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)).

> In the case of prison inmates, the following principles apply:
>
> [i]n Sandin v. Conner, the Supreme Court announced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by procedural due process guarantees. Although the Court acknowledged that liberty interests could arise from means other than the Due Process Clause itself, the Court concluded that state-created liberty interests could arise only when a prison's action imposed an '*atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.*' ... In finding that the prisoner's thirty-day confinement in disciplinary custody did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest, the Court considered the following two factors: 1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates in solitary confinement.

Shoats, 213 F.3d at 143-44 (citations omitted, emphasis added).

Applying these legal benchmarks, it has been held that disciplinary proceedings which result in sanctions of disciplinary segregation for six months or more do not impose atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life, and therefore do not give rise to due process claims. Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002)(7 months disciplinary confinement). In the instant action, Plaintiff was sanctioned to 9 months in the RHU. As such, any due process argument asserted with respect to his misconduct proceedings fails to articulate a sufficient liberty interest to trigger a valid due process claim. The mere change in Plaintiff's custody level and placement in the RHU does not establish an atypical or significant hardship when compared to the normal incidents of prison life.

Further, while Plaintiff complains of the loss of prison wages, it is well-established that an inmate has no property interest in his prison job. Bryan v. Werner, 516 F.2d 233, 240 (3d Cir. 1975); James v. Quinlan, 866 F.2d 627, 629-30 (3d Cir. 1989), cert. denied, 493 U.S. 870 (1989)(inmate does not have either a liberty or property interest in keeping a particular job entitled to Due Process protection). For these reasons, Plaintiff's due process claims are without merit and will be dismissed.[1]

F.  Violations of Criminal Statutes/DOC Regulations

Without unnecessary elaboration, Plaintiff's claims that Defendants violated

---

[1] Defendants also aptly point out that in the attachments to Plaintiff's complaint, the Initial Review Response to Plaintiff's grievance reveals that he lost his job due to his refusal to obey an order, and that Defendant Mann was not involved in his removal from his job assignment. (Doc. 10 at 14.)

12

criminal statutes are subject to dismissal.  A private citizen has no constitutional right to bring a criminal complaint against another individual.  See Leeke v. Zimmerman, 454 U.S. 83, 85-87 (1981).  Any such claim in the instant § 1983 action is improper.

In addition, any claim by Plaintiff that Defendant Mann failed to adhere to DOC regulations with respect to sexual harassment and association with other inmates is not cognizable in this action.  It is well-established that "prison regulations do not, in themselves, confer a liberty interest protected by due process, and the failure of prison officials to follow DOC policy does not, in and of itself, result in a violation of due process."  Tarselli v. Harkleroad, Civ.A. 10-1266, 2012 WL 603219 at *7 (W.D. Pa. Feb. 23, 2012)(citations omitted).  The simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension.  United States v. Jiles, 658 F.2d 194, 200 (3d Cir. 1981).  As such, Defendants' motion to dismiss will be granted with respect to these claims.

G.   Failure to Protect

Plaintiff raises a failure to protect claim under the Eighth Amendment.  He claims that Defendants Mann, Zamboni, Briner, Foulds and Long discussed his criminal case in front of other inmates which resulted in his receiving threats of bodily harm while confined at SCI-Coal Township in 2011-12 and at SCI-Smithfield in 2013.

Defendants contend that the amended complaint fails to state a claim upon

13

which relief can be granted, because allegations of verbal abuse do not state a claim under 42 U.S.C. § 1983. The court agrees that verbal abuse and threatening language, without more, are not actionable. See Maclean v. Secor, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995); Balliet v. Whitmore, 626 F. Supp. 219, 228 (M.D. Pa. 1986), aff'd, 800 F.2d 1130 (3d Cir. 1986). However, Plaintiff's allegations go beyond mere verbal abuse. He specifically alleges that Defendants referred to him as a "child rapist", a "snitch", and a "pedophile" in front of other inmates. (Doc. 10 at 3.)

Prison officials have a duty to protect prisoners from violence at the hands of others. Farmer v. Brennan, 511 U.S. 825, 833 (1994). Prison officials and employees may be liable for failure to protect an inmate from the use of excessive force if they are deliberately indifferent to a substantial risk of serious harm to the inmate. Id. at 834. To plead an Eighth Amendment failure-to-protect claim, a plaintiff must plead facts raising a reasonable inference of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation. See Hamilton v. Leavy, 117 F.3d 742, 747 (3d Cir. 1997).

Plaintiff alleges that the Defendants labeled him a child rapist/pedophile and snitch in front of other inmates. Such labels can lead to a substantial risk of serious harm to the prisoner. Renchenski v. Williams, 622 F.3d 315, 326 (2010)(stating that "[i]t is largely without question . . . that the sex offender label severely stigmatizes an individual, and that a prisoner labeled as a sex offender faces unique challenges in the prison environment" and citing studies which support the proposition in that inmate

14

norms call for the savage beating of sex offenders). As such, the court concludes that Plaintiff has stated a claim upon which relief can be granted. See Brown v. Nerves, 265 F. App'x 734 (10th Cir. 2008)(holding that allegations that prison official disclosed that prisoner was a child molester to another inmate who then spread that information in prison stated an Eighth Amendment claim upon which relief can be granted); Benefield v. McDowell, 241 F.3d 1267 (10th Cir. 2001)(Inmate allegations that officer labeled him a snitch in front of other inmates, even though inmate had not in fact been assaulted, stated a claim under Eighth Amendment).

An inmate need not wait until an actual attack occurs to obtain relief. Benefield, 241 F.3d at 1270-72. As in Benefield, Defendants in the instant case contend that allegations of verbal harassment and psychological injury caused by living in fear of other inmates is not sufficient to state an Eighth Amendment claim. Id. at 1271. The United States Court of Appeals for the Tenth Circuit noted, however, that the Eighth Amendment reaches conduct that "'is sure or very likely to cause' serious injury at the hands of other inmates." Id. at 1272 (quoting Helling v. McKinney, 509 U.S. 25, 33 (1993)).

Although Plaintiff does not specifically allege that he was physically attacked by other inmates due to Defendants' statements, the court finds that, accepting Plaintiff's allegations as true, Plaintiff has sufficiently pled that Defendants violated the Eighth Amendment by knowingly placing him in a class of inmates subject to serious bodily harm. See Benefield, 241 F.3d at 1271-72; Brown, 265 F. App'x at

735-36; Joseph v. Asure, et al., Civil Action No. 1:11-cv-1255 at 4-5 (M.D. Pa. Feb. 8, 2012).  Plaintiff will be permitted the opportunity to present evidence from which a reasonable fact finder could conclude that he suffered a physical injury or that he faced a substantial risk of serious harm.  Accordingly, Defendants' motion to dismiss will be denied with respect to the failure to protect claim.

An appropriate order follows.