# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRIAN C. MOORE,** | : | **Civil No. 3:13-CV-02771** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **ANGELA D. MANN,** *et al.,* | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

## I.   Statement of Facts and of The Case

This case presents us with what we have described in the past as "an unsatisfactory Hobson's choice." Peet v. Beard, No. 3:10-CV-482, 2015 WL 7568300, at *10 (M.D. Pa. Nov. 25, 2015). This Hobson's choice is a function of an inexplicable[1] failure by the defense in this prisoner civil rights action to timely and fully pursue a "strict and largely unyielding" id., legal defense, the alleged failure of

---

[1] While we note this protracted and unaccountable delay in timely raising and presenting this exhaustion defense, we hasten to add that current defense counsel was not assigned to this case when this delay occurred. Thus, current counsel is in no way responsible for the Hobson's choice we describe. Instead, that newly assigned counsel has identified this issue and pursued this defense promptly upon his appointment to this case.

the plaintiff to fully and properly exhaust his administrative remedies prior to filing this lawsuit some eight years ago in 2013.

In this case, at the time that the inmate-plaintiff, Brian Moore, filed this complaint in November of 2013, there may have been questions concerning whether he had exhausted prison grievances with respect to all defendants and all claims named in the complaint. In June of 2015, the defendants' answer to the complaint asserted the affirmative defense of failure to exhaust, albeit in a cursory fashion listing this as one of thirteen affirmative defenses. (Doc. 54).

This affirmative defense then lay fallow, unpursued by the defendants through any dispositive motion for more than five years. Thus, when we set a November 2017 dispositive motions deadline in this case, (Doc. 93), the defendants filed a summary judgment motion which did not advance this affirmative defense. (Doc. 98). Quite the contrary, the statement of facts submitted by the defendants in support of this summary judgment motion seemed to explicitly concede that grievance exhaustion had taken place. The statement of facts described the issue of grievance exhaustion in the following terms:

> 6. Grievance No. 401780 was filed by Plaintiff Brian Moore (AJ0701) while he was housed at SCI-Coal Township regarding his allegations that Defendants failed to protect him against verbal harassment and threats of physical harm from other inmates, and indeed, caused same because they discussed his criminal case. See Grievance No. 401780, attached in the Appendix as Exhibit "A-1." See also Exhibit "A," ¶ 8.
>
> 7. The grievance was denied at all levels of review.

(Doc. 100). Given this unequivocal recital by the defendants that Moore's grievance addressed a claim that "*Defendants* failed to protect him against verbal harassment and threats of physical harm from other inmates," and the defendants' averment that Moore's "grievance was denied at all levels of review" we concluded that "the parties agree that Moore exhausted his claims." (Doc. 115 at 4 n. 2).

This understanding remained unchallenged by the defense for years and until recently we had no reason to question this understanding. Instead, the defense of this case rested on other grounds and the plaintiff was compelled to run the gauntlet of an appeal to the Third Circuit in order to restore his claims which were initially dismissed by the district court.

It is against this backdrop that the instant case comes before us again after persisting nearly nine years of motions and appeals. Now we are asked, for the first time, to consider whether the defendants are entitled to a partial summary judgment in this civil rights case, originally filed in 2013 by the *pro se* plaintiff, Brian C. Moore, based upon Moore's alleged failure to fully and properly exhaust all of his claims through the prison grievance process. As we have noted, Mr. Moore's claim has a long history, surviving a motion to dismiss and returning to us after the original grant of summary judgment was reversed by the Third Circuit. What remains after this gauntlet of procedural hurdles, is the plaintiff's Eighth Amendment failure-to-protect claim which he asserts against defendants Angela Mann, a former counselor

at SCI-Coal Township where Moore was previously incarcerated, as well as several other corrections officers who were employed at SCI-Coal Township at the time of the alleged incident. The facts which support the original cause of action have remained unchanged despite just under a decade of litigation, and thus the factual allegations of the underlying claim, as well as the procedural history up to the point of the Third Circuit appeal, have been well documented. The Third Circuit summarized the case as follows:

> Moore's complaint alleges that, in 2011, he witnessed his former counselor at SCI-Coal Township, defendant Angela Mann, engaging in inappropriate sexual contact with other inmates. Shortly thereafter, Mann and other corrections defendants allegedly began making inflammatory statements about Moore, calling him a pedophile, gay, and a snitch. Moore claimed that the defendants violated his Eight Amendment rights by making these statements to other inmates, thereby placing him in a class of vulnerable inmates that are frequently subject to assault. Moore also raised other claim stemming from his allegations that the defendants filed a false misconduct against him, resulting in a sanction of 270 days in the Restricted Housing Unit, and lost prison wages for that time period.

> The defendants filed a motion to dismiss, which the District Court granted in part. The District Court dismissed all claims against defendants Varano, Wetzel, and Long for failure to plead their personal involvement; all claims against all defendants in their official capacities for monetary damages, because the claims were barred by the Eleventh Amendment; all state law tort claims because they were barred by sovereign immunity under state law; all due process claims, because Moore's sanction of 270 days' disciplinary confinement and loss of prison wages were insufficient legal interests to trigger due process protection; and all claims based on the violation of criminal statutes and Department of Corrections regulations, as the alleged violation of those statutes and regulations did not state a claim under 42 U.S.C. § 1983. The District Court denied the motion to dismiss with respect to Moore's

Eighth Amendment failure-to-protect claim against the defendants who allegedly disparaged Moore and discussed his criminal history, including defendants Mann, Foulds, Hering, Briner, and Zamboni.

After discovery, the remaining defendants moved for summary judgment. All of the remaining defendants categorically denied that they discussed Moore's criminal history with other inmates. Defendant Long added that he interviewed all staff members connected with Moore's grievance, and that none were aware of Moore's allegations. Additionally, an investigation by the Office of Special Investigations and Intelligence, independent of the grievance process, did not substantiate most of Moore's claims, although Moore did state in that investigation that Mann was labeling him a snitch and openly discussing his criminal history.

Moore opposed the summary judgment motion with his affidavits, an affidavit from a fellow inmate named Terry Shay, the defendants' responses to his interrogatories, and his administrative grievance records. Moore's affidavits state that he overheard the defendants calling him a snitch, gay, and a pedophile in front of other inmates, and that, as a result, other inmates at SCI-Coal Township threatened him with bodily harm in 2011 and 2012. After he transferred to SCI-Smithfield, he encountered the same threats in 2013 and 2014 because a number of inmates were transferred from SCI-Coal Township to SCI-Smithfield. In his brief in opposition to the summary judgment motion, Moore added that those threats have materialized. He stated he was assaulted by inmates at SCI-Coal Township and SCI-Smithfield, though he did not describe those assaults or state that he suffered any physical injuries. Shay's affidavit similarly states that the defendants openly discussed Moore's criminal history, and that inmates at SCI-Smithfield have threatened Moore as a result.

At least one interrogatory response, from defendant Angela Mann, states that disparaging an inmate regarding his criminal history is prohibited under Department of Corrections policy. The grievance records indicate that Moore informed at least defendant Foulds that other defendants, including Mann, were placing him in danger by discussing his criminal history with other inmates. And one of Moore's affidavits states that he informed Foulds of this information around September 2011.

5

> The Magistrate Judge recommended denying the motion for summary judgment. The District Court rejected the recommendation, and granted the motion for summary judgment. The District Court determined that although there was a genuine issue of material fact regarding whether the defendants actually told other inmates that Moore was gay, a pedophile, or a snitch, Moore had not submitted any facts from which a jury could find that the defendants knew of and disregarded the risk of serious harm that those statements would create.

(Doc. 124-2, at 2-5).

Upon this factual backdrop, the Third Circuit held that the District Court erred in determining that Moore had not submitted any facts suggesting deliberate indifference by defendants. It explained that the court had not considered the "contextual and circumstantial evidence that Moore presented," in its finding, including the prison norms stigmatizing sex offenders in the prison context, and the fact that the affidavits submitted by Moore showed he had communicated the risk of harm to at least one defendant. (Id. at 7-8). Further, the Third Circuit found that there still existed a question as to whether Moore is prevented from recovering compensatory damages for mental and emotional injuries as "whether he was assaulted and suffered any physical injuries are live questions." (Id. at 9). The Third Circuit vacated the judgment of the District Court as to the order granting summary

judgment[2] and remanded the case for further proceedings consistent with its opinion. (Id.)

And so, Moore's case has returned to the district court. The parties consented to Magistrate Judge jurisdiction on April 15, 2021. (Doc. 131). After an extension of time to file dispositive motions, the defendants filed the instant motion for summary judgment on July 30, 2021. (Doc. 139). Despite the slew of issues and causes of action raised and dismissed in the course of this lengthy procedural history, the motion for partial summary judgment before us for the first time presents a relatively simple argument: that the plaintiff failed to fully and properly exhaust his administrative remedies with respect to all defendants and all claims. The motion is fully briefed and ripe for disposition. (Docs. 140, 141, 158 159, 160). For the reasons set forth below, the defendants' motion for summary judgment on this exhaustion issue is denied.

We find, as other courts have found, that this unaccountable delay in properly framing this issue for summary judgment consideration bars the entry of a partial summary in favor of some defendants on some claims. However, we are also

---

[2] As the Third Circuit noted at Doc. 124-2, at 3 n.2, Moore did not challenge the order granting the motion to dismiss, and thus the court did not address the dismissal of those claims. Accordingly, the only claim which remains on remand is the plaintiff's Eighth Amendment failure to protect claim which survived the original motion to dismiss.

constrained to note the other aspect of the unsatisfactory Hobson's choice created

by the delay in submitting this issue for our consideration. It is well-settled that:

> [T]he exhaustion of available administrative remedies prior to filing
> suit is mandatory. See Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000)
> ("[I]t is beyond the power of this court – or any other – to excuse
> compliance with the exhaustion requirement, whether on the ground of
> futility, inadequacy or any other basis.") (quoting Beeson v. Fishkill
> Corr. Facility, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998)). Whether
> an inmate has exhausted administrative remedies is a question of law
> that is to be determined by the court, even if that determination requires
> the resolution of disputed facts. See Small v. Camden County, 728 F.3d
> 265, 270-71 (3d Cir. 2013); see also Drippe v. Tobelinski, 604 F.3d
> 778, 781 (3d Cir. 2010).

Peet v. Beard, No. 3:10-CV-482, 2015 WL 7568300, at *5 (M.D. Pa. Nov. 25, 2015).

Therefore, while a failure to timely pursue this affirmative defense may bar summary

judgment consideration of this claim, the Third Circuit also teaches that, if the failure

to exhaust defense is raised in the defendants' answer, the defendants may

nonetheless pursue this affirmative defense notwithstanding their failure to raise it

in a timely fashion at summary judgment, by seeking a bifurcated non-jury trial and

adjudication of this issue.  Drippe v. Gototweski, 434 F. App's 79, 81 (3d Cir. 2011).

This is the course compelled by law to navigate the unsatisfactory Hobson's

choice which this past inaction in asserting the failure to exhaust defense now thrusts

upon us. Therefore, we will follow this path and deny this motion for partial

summary judgment, while directing the defendants to seek a bifurcated non-jury

determination of this issue, which was preserved by the defense in their answer to Moore's complaint.

## II.   Discussion

### A. Motion for Summary Judgment – Standard of Review

The defendant has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Through summary adjudication, a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., 702 F.Supp.2d 465, 468 (M.D. Pa. 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id., at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec.

& Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006), accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id., at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers

Ins. Co., 928 F. Supp. 474, 482 (D.N.J. 1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007) (citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark New Jersey v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982); see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, it is emphatically not the province of the court to weigh evidence or assess credibility when passing upon a motion for summary judgment. Rather, in adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, Anderson, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party. Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's

must be taken as true. Id. Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Anderson, 477 U.S. at 252; see also Big Apple BMW, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the fact finder to ascertain the believability and weight of the evidence.

Id. In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted); NAACP v. North Hudson Reg'l Fire & Rescue, 665 F.3d 464, 476 (3d Cir. 2011).

## B. **The Defendant's Motion Should Be Denied Without Prejudice to Consideration of this Exhaustion Defense Through a Non-Jury Trial**

The defendants' brief in support of their motion for partial summary judgment raises three discrete issues relating to whether the plaintiff properly exhausted his administrative remedies prior to filing this 2013 complaint in federal court. At the

outset, we note that the defendants never previously argued that the plaintiff failed to exhaust his administrative remedies, despite filing a detailed motion to dismiss raising at least six grounds for dismissal, (Doc. 28), as well as a previous motion for summary judgment which resulted in this remand from the Third Circuit. (Doc. 71). Nevertheless, the defendants have now embarked upon a new line of reasoning as to why they are entitled to summary judgment upon this same, heavily litigated, set of facts, arguing now that the grievance filed by the plaintiff in February 2012, Grievance 401780, (Doc. 10, at 21), was deficient, resulting in the plaintiff failing to adequately exhaust his remedies.

The defendants first argue that summary judgment should be granted as to the claims against Defendant Long, because he was not named in the original grievance. Next, they argue that the grievance did not allege facts that Defendants Foulds, Hering, Briner, Zamboni, and Long discussed his criminal case or publicly labeled him a snitch or pedophile, and thus summary judgment should be granted as to those defendants. Finally, the defendants argue that, because the plaintiff failed to request compensatory damages in his grievance, he is not entitled to such damages as a matter of law. Notably, the defendants appear to concede that this failure to exhaust claim is not a total defense to this lawsuit. Specifically, the defendants acknowledge that Moore's grievance fully exhausted his claims against Defendant Angela Mann

at least insofar as those claims entail damages in the form of lost prison wages, as well as equitable relief.

The defendants cite sections of the Pennsylvania Department of Corrections Inmate Grievance System Policy in support of these arguments, detailing the three-step process for resolution of inmate grievances which would trigger exhaustion. Rather than analyzing this grievance and whether it complies with the DOC policy, we turn instead to what we think is the main issue in this motion: whether the defendants have properly raised this exhaustion argument in this second motion for summary judgment, having never before argued this issue. In our view, this argument is not properly raised at this stage of litigation as defendants have already conceded administrative exhaustion or, at the very least, forfeited their right to assert this defense.

The defendants aver that the affirmative defense of failure to exhaust administrative remedies was preserved in their answer and never conceded in subsequent briefs. Although it is true that the defendants stated in their 2015 answer, "Plaintiff has failed to exhaust all of his administrative remedies pursuant to the Prison Litigation Reform Act of 1996, 42 U.S.C. § 1997e(a)," (Doc. 54, at 8), their subsequent briefs seemingly conceded that the filed grievance had adequately exhausted the plaintiff's claim. We addressed this issue in our 2017 Report and Recommendation on the defendants' first motion for summary judgment, stating in

14

a footnote, "The defendants' statement of undisputed facts (Doc. 100) makes [the straightforward nature of the factual allegations] clear, since much of the factual recitation concerns irrelevant information such as the DOC's grievance process, which is not an issue in this case because the parties agree that Moore exhausted his claims." (Doc. 115, at 4 n.2). The defendants argue that "the comment in the R & R was incorrect and since it was not a ruling, had no law of the case doctrine effect." (Doc. 160, at 2).

Whether or not the footnote in the R&R constituted a ruling, the basis for the court's interpretation of the defendants' stance on this issue remains apparent upon another view of the record. The arguments made by the defendants in their motion for summary judgment, and material facts conceded in those arguments, certainly, at the very least, imply that the defendants made a conscious decision not to argue failure to exhaust remedies. For example, as noted in our Report and Recommendation, the Statement of Material Facts submitted with the first motion for summary judgment details, at length, the inmate grievance process required by the Department of Corrections' Administrative Directive DC-ADM 804 and states that Grievance No. 401780 filed by Plaintiff Brian Moore alleged "that *Defendants* failed to protect him . . . and indeed caused same because they discussed his criminal case." (Doc. 73, ¶ 6) (emphasis added). The Statement of Material Facts then simply notes that "the grievance was denied at all levels of review," (Id., ¶ 7), and goes on

15

to discuss that "Defendant Long . . . interviewed all staff members connected with the grievance." (Id., ¶ 8). Though the defendants did not expressly articulate that they were conceding the exhaustion defense previously raised in their answer, it was the Court's interpretation that the stipulated facts demonstrated the defendants conceded that the complaint had been exhausted.

Moreover, despite the defendants' assertion that it preserved the failure to exhaust defense in its answer from 2015 and was not required to argue it in any subsequent motion before the court, we find it would be an abuse of this Court's discretion to allow the defendants to pursue this claim through a summary judgment motion at this late stage in the litigation. The defendants appear to argue that their failure to raise the exhaustion issue in their previous motions does not render it waived, referencing the Third Circuit decision in Drippe v. Tobelinski, 604 F.3d 778 (3d Cir. 2010),[3] Drippe v. Gototweski, 434 Fed. Appx. 79 (3d Cir. 2011),  and this Court's decision in Peet v. Beard, No. 3:10-CV-482, 2015 WL 7568300 (M.D. Pa. Nov. 25, 2015) in support of their argument. As discussed below, while we conclude

---

[3] The defendants actually cite Drippe v. Gototweski, 434 Fed. Appx. 79 (3d Cir. 2011) in their brief, a subsequent opinion in the same case. The defendants do not reference a particular section of the opinion, but rather, we assume, rely on the holding that the defendant's failure to make a timely motion for summary judgment based upon an affirmative defense did not constitute a waiver to pursue the defense at trial. Our analysis focuses on the Third Circuit's holding in its previous opinion on the motion for summary judgment as it better describes the policy which supported the original remand, and which frames our analysis in this case.

16

that this trilogy of cases permit consideration of this defense through a non-jury trial notwithstanding the failure to timely advance this defense at summary judgment, we find the circumstances of the instant case to be distinguishable from Peet and find the holding in Drippe to support our denial of summary judgment as to this claim.

In Drippe, the Third Circuit expressed reservation about a defendant's belated assertion of a failure to exhaust defense where the defense was not raised within the time limits prescribed by the court for filing a motion for summary judgment. There, a defendant declined to move for summary judgment on the grounds that the plaintiff failed to exhaust administrative remedies prior to filing suit, but instead raised the issue in an oral motion that was lodged on the eve of trial, after jury selection, immediately prior to trial commencing, and seven months after the deadline the court prescribed for filing dispositive motions. 604 F.3d at 782. Nevertheless, the district court considered the motion, despite it having been filed out of time, and found that the plaintiff's failure to exhaust compelled entry of summary judgment in the defendant's favor in advance of trial. The plaintiff appealed and the Third Circuit reversed, holding that, although it does not "read a strict timing requirement into the PLRA for prosecution of the affirmative defense of failure to exhaust," Id. at 781, and district courts enjoy "great deference with regard to matters of case management," Id. at 783, "there are times when a district court exceeds the permissible bounds of its broad discretion." Id. Guided by the Supreme Court's

17

holding in <u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871 (2011), the Third Circuit noted that, following <u>Lujan</u>, federal courts have found that Rule 6(b) of the Federal Rules of Civil Procedure imposes a "strict requirement that litigants file formal motions for Rule 6(b) time-extensions when attempting to file in contravention of a scheduling order." <u>Id.</u> at 784. Accordingly, the Third Circuit found the district court in <u>Drippe</u> had exceeded its discretion in that its "entertainment of [the oral motion to dismiss], some seven months after the scheduling deadline for dispositive motions, does not comply with Rule 6(b) as construed by <u>Lujan</u>." <u>Id.</u> at 785.

In reaching this conclusion, the Third Circuit does not appear to have been simply invoking the strictures of the Rule but was also clearly influenced by the fact that the way in which the motion was raised – orally, without notice, after a jury had been selected, and immediately before trial was to commence – placed the plaintiff in an unfair position that was the very reason Rule 6(b) prescribes certain procedural requirements for the filing of late motions. In particular, the Rule requires that late filings must "contain a high degree of formality and precision" in order to "put [ ] the opposing party on notice that a motion is at issue and that he therefore ought to respond." <u>Id.</u> (quoting <u>Lujan</u>, 497 U.S. at 896 n.5). The court of appeals further observed something particularly relevant to this case: "The resolution of this issue – failure to exhaust administrative remedies – was highly fact-intensive and required

18

a judgment by the District Court whether the specific grievances complied with the specific prison's grievance procedure." Id. The court found that the plaintiff should have had an opportunity to research and brief the issue, and that compliance with Rule 6(b) would have provided that opportunity. Id. Accordingly, the court of appeals reversed the entry of summary judgment and remanded to allow the defendant to file a motion for an extension of time in compliance with Rule 6(b)(1)(B). Id. at 785-86.

We considered the Third Circuit's decision in Drippe when deciding whether to grant the defendant's efforts to assert a failure to exhaust defense in Peet. In Peet, an inmate sued several prison officials when he was severely injured after falling on a radiator while having a seizure. Peet v. Beard, No. 3:10-CV-482, 2015 WL 7568300, at *2 (M.D. Pa. Nov. 25, 2015). The plaintiff's original complaint was dismissed on motion by defendants, based on his failure to exhaust administrative remedies, because he had never attempted to lodge any grievance with the prison relating to the injuries he had suffered. (Id. at *4). When the plaintiff filed a second complaint on the same facts, the defendants included the affirmative defense of failure to exhaust in their answer, but inexplicably never argued the issue again in their dispositive motions, (id.), including declining to raise the issue in their timely motion for summary judgment that was granted in part. (Id. at *3). Five years into the litigation, and after trial had been scheduled on the remaining issues, the

19

defendants filed a "motion for bifurcation" which essentially sought a determination by the court in favor of the defendants as a matter of law on the ground of failure to exhaust. (Id.) At an evidentiary hearing on the issue, the plaintiff conceded that he had declined to file a grievance despite the parties agreeing that the prison officials did not take steps to prevent him from doing so. (Id. at *4).

Although we were "troubled by the way in which the defendants . . . belatedly raised [the exhaustion] issue after failing to address it for nearly the entirety of [the] case – a case that was filed after its predecessor was dismissed because of the plaintiff's acknowledged failure to exhaust his administrative remedies," (WL 7568300 at *5) we were nonetheless "constrained to find that Peet's claims [were] barred because he . . . failed to file any grievance at any time, or even to seek leave to file a grievance out of time," (Id. at *4), because the parties stipulated to these undisputed facts, making it clear that Peet did not exhaust his available remedies, (Id. at *5), and because technically the defense was raised in a timely way and preserved in a way that was permissible under Drippe. (Id. at *8).

Our view at the time was that the outcome in Peet was "an unsatisfactory Hobson's choice." (Id. at *10). Unsatisfactory because, though there was never any dispute that Peet failed to exhaust his claims, the defense, by failing to raise the issue, allowed "the parties and the court [to spend] years litigating and administering this lawsuit – time and resources that could have been put to other matters had the

20

defendants pursued relief on their affirmative defense early on." (Id.) Thus, though the defendants ask us to rely on this previous holding to support their motion for summary judgment, we are inclined to distinguish the instant case from the holding in Peet.

Moreover, the practice employed in Peet most assuredly is not an illustration of the path parties should follow in litigating this failure to exhaust defense. Quite the contrary, in Peet we were compelled to address what we regarded as a somewhat unsatisfactory outcome through a motion to conduct a non-jury trial of this exhaustion defense based on the narrow and inflexible factual background presented in that case. We were also guided by Third Circuit precedent which seemed to permit the assertion of a long neglected failure to exhaust defense through a motion seeking a bifurcated non-jury determination of this defense while at the same time denying summary judgment treatment of this belated defense. As we observed the decision in Drippe v. Tobelinski, which found that allowing a defendant to belatedly move for summary judgment on a failure to exhaust claim constituted an abuse of discretion  ultimately was "little more than a procedural and pyrrhic" victory,  Peet, 2015 WL 7568300 at *8, since the court of appeals subsequently upheld the resolution of this defense through a non-jury trial, reasoning that the defendant: "raised the affirmative defense in his responsive pleading, and he was, therefore,

entitled to pursue this defense at trial, even if he waived the right to summary relief on that claim." Id. citing Drippe v. Gototweski, 434 F. App'x at 81.

So it is here. Moreover, the distinction between a summary judgment motion and a non-jury trial resolution of the exhaustion defense that was recognized by the court of appeals in its Drippe decisions is not some mere formalism. It can have real world significance. For example, in Peet, there ultimately was no question of fact as to the exhaustion of the plaintiff's claim, it had been conceded by the plaintiff that he never raised his claims in a grievance. Therefore, the defense request for a non-jury was akin to a summary judgment resolution. However, that factual backdrop stands in stark contrast to the instant case. Here, Moore did, indeed, file a grievance which went through the appeals process proscribed by the DOC Administrative Directives and, as defendants concede, was "denied at all levels of review." The defendants argue that his grievance was deficient as to certain parties and remedies, not that he never raised his claims at the administrative level. Yet, we note that it is not entirely clear that these defenses would be amenable to a summary judgment resolution since Moore's grievance names a number of the defendants that the defense seeks to have dismissed for failure to exhaust and the grievance demands "[f]inancial compensation" albeit in the form of lost prison wages.  (Doc. 142-2).

Having distinguished the instant case from our holding in Peet, we further find that the policy from Drippe, supports our conclusion that a belated summary

22

judgment motion is not the appropriate way in which to address this defense. At the outset, the fact that the defendants technically filed the instant motion within the permitted filing time of dispositive motions at this stage of the litigation disregards the gauntlet of motions and appeals that preceded this remand. The instant motion was not filed on the eve of trial, true, but much past that – beyond a previously argued and decided motion to dismiss and motion for summary judgment based upon this same nearly decade-old grievance. In our view, the circumstances here are more egregious than those in Drippe, since in this case the delay in actively pursuing the defense constituted a matter of years not mere weeks. Even if the defendant argues that this motion is technically timely under Rule 6(b) as required by Drippe, their raising of this issue at this late stage in the litigation runs afoul of the policy behind Rule 6(b)'s requirement as articulated in that case, that "*the way in which the motion was raised* . . . placed the plaintiff in an unfair position that was the very reason Rule 6(b) prescribes certain procedural requirements for the filing of late motions," particularly in relation to "[t]he resolution of this issue – failure to exhaust administrative remedies – [which is] highly fact-intensive and require[s] a judgment by the District Court whether the specific grievances complied with the specific prison's grievance procedure." 604 F.3d at 785. We think this policy has particular weight in this case, where it is conceded that a grievance was filed and adequately administratively appealed, but the defendants are asking us to determine on summary

judgment whether the grievance adequately included parties and remedies as required by a decade-old prison grievance procedure. On this score, it is expected that the prison's grievance procedures will change significantly over the course of a decade. Indeed, Pennsylvania Department of Corrections' Grievance Policy DC-ADM 804 has been updated twice since the 2010 policy cited in defendants' brief.[4] Thus, we can think of no situation which more adequately demonstrates the inequity of raising a failure to exhaust administrative remedies argument than attempting to raise this argument at this stage. Accordingly, we decline to allow the defendant to prevail on this argument based on the policy from Drippe, where they found the district court has abused its discretion in allowing the defendant to raise an exhaustion claim just a few days after the pleading deadline.

In the interest of equity, the material facts as to Moore's Eighth Amendment complaint, having survived years of litigation and scrutiny, as well as the belated issue of whether some portion of these claims is barred due to Moore's failure to fully grieve those claims, must be decided on the merits at trial. Thus, we decline to rule in the defendants' favor at the summary judgment stage. Instead we will direct

---

[4]    https://www.law.umich.edu/special/policyclearinghouse/Documents/PA%20-%20Inmate%20Grievances.pdf;
https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf

the defendants to seek a bifurcated trial of the exhaustion issue in this case, and allow

Moore to fully develop a factual record on this exhaustion issue.

### III.    <u>**Conclusion**</u>

Accordingly, for the foregoing reasons, the defendant's motion for summary

judgment (Doc. 139) will be DENIED.

An appropriate order follows.

<u>*S/ Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

DATED: January 13, 2022